**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Northern Division)

| | | |
|---|---|---|
| CYNTHIA L. HARKNESS | : | |
| 4313 St. Paul Street | | |
| Baltimore, Maryland 21218, | : | |
| | | |
| Plaintiff, | : | |
| | | |
| v. | : | Civil Action No.: |
| | | |
| FIELDSTONE INVESTMENT | : | |
| CORPORATION | | |
| 11000 Broken Land Parkway | : | |
| Columbia, Maryland 21044, | | |
| | : | |
| Serve on: | | |
| Office of General Counsel | : | |
| Fieldstone Investment Corporation | | |
| Columbia, Maryland 21044, | : | |
| | | |
| Defendant. | : | |

\*   \*   \*   \*   ooo0ooo   \*   \*   \*   \*

## COMPLAINT

Plaintiff, Cynthia L. Harkness, by and through her attorneys, sues Defendant Fieldstone

Investment Corporation ("Fieldstone") and alleges:

1.      This is an action to seek redress for violations of the employee-protection

provisions of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A ("the Act").

2.      As described more fully below, Ms. Harkness was General Counsel and an

executive of Fieldstone whose work performance was outstanding and highly praised.  In January

2005, Ms. Harkness learned from another Fieldstone attorney that Fieldstone's Chief Executive

Officer, Michael Sonnenfeld, had disclosed inside information to an outside investor, a potential

violation of federal securities laws and regulations.  Ms. Harkness promptly notified the

chairman of Fieldstone's Audit Committee and, at his direction, investigated the facts and reported the findings back to him.

3.    When Mr. Sonnenfeld learned that Ms. Harkness had reported him to the Audit Committee, he was determined to end her employment at Fieldstone.  In the hope that she would resign, he relieved her of significant responsibilities, removed her from participation in executive meetings, downgraded the input of the General Counsel in decision making, and criticized her performance in remarks to her colleagues and subordinates.

4.    In December 2006, at the insistence of outside auditors, Ms. Harkness met with the Audit Committee to discuss Fieldstone's substantial risks of failure to comply with certain aspects of the Act.  Since his previous efforts to drive Ms. Harkness out of Fieldstone had failed, Mr. Sonnenfeld used this occasion to terminate her employment with Fieldstone.

5.    Fieldstone's adverse actions against Ms. Harkness violate the Act.  Ms. Harkness seeks "make-whole" relief under the Act, including reinstatement, back pay, compensatory damages, special damages, and any other available relief.

## I.  Jurisdiction

6.    This court has subject–matter jurisdiction over this action pursuant to U.S.C. § 1514A (b)(1)(B) and 29 C.F.R. § 1980.114.

## II.  Parties

7.    Plaintiff Cynthia Harkness resides in Baltimore, Maryland.  She was an employee under the Act pursuant to 29 C.F.R. § 1980.101.

2

8.     Fieldstone Investment Corporation is based in Columbia, Maryland. It owns and manages a portfolio of non-conforming mortgage loans originated primarily by its mortgage origination subsidiary, Fieldstone Mortgage Company, currently in bankruptcy. In July 2007, Fieldstone Investment Corporation was acquired by C-Bass, LLC, a New York company.

9.     For purposes of the Act, Fieldstone Investment Corporation was at pertinent times a publicly-traded company with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, 15 U.S.C. § 781 and was required to file reports under Section 15(d) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78o(d). Fieldstone became a publicly-traded entity in February 2005.

10.     At all times relevant to this complaint, Fieldstone was subject to the oversight of its Audit Committee.

### III.   Administrative Prerequisites / Procedural Background

11.     On March 8, 2007, Ms. Harkness filed a timely complaint against Fieldstone with the Department of Labor, Occupational Safety and Health Administration (OSHA) asserting claims under the Sarbanes-Oxley Act.

12.     On January 10, 2007, Ms. Harkness filed a Notice of Intention to File Complaint in Federal Court with the Department of Labor's Office of Administrative Law Judges.

13.     Because the Secretary has not issued a final decision within 180 days of the filing of Ms. Harkness' complaint, and there has been no delay due to bad faith on the part of Ms. Harkness, de novo review is appropriate in this court pursuant to U.S.C. § 1514A (b)(1)(B) and 29 C.F.R. § 1980.114.

IV.  Factual Allegations

14.     At all times relevant to this Complaint, Fieldstone Investment Corporation owned and managed a portfolio of non-conforming mortgage loans originated primarily by its mortgage origination subsidiary, Fieldstone Mortgage Company.

15.     Cynthia Harkness joined Fieldstone as its General Counsel, Senior Vice President and Corporate Secretary on or about March 1, 2004 and dedicated nearly three years of her life to the company.  Ms. Harkness came to Fieldstone with an exceptional background as general counsel and executive of high-profile national and international corporations.

16.     Michael J. Sonnenfeld, President and Corporate Executive Officer of Fieldstone, sought out Ms. Harkness and invited her to join Fieldstone because he needed a General Counsel with the caliber and experience to build and manage a legal department for Fieldstone as it became a publicly-traded company.

17.     Ms. Harkness' performance at Fieldstone was extraordinary.  In her first year alone, Ms. Harkness single-handedly built a successful legal department.  She and her team brought Fieldstone into full compliance with applicable securities regulations and filing procedures – enabling Fieldstone to successfully go public in February 2005, implemented training and reporting systems, ensured successful state audits, resolved numerous litigation matters, and built a solid legal team.

18.     Because she proved so capable, in the spring of 2004, Mr. Sonnenfeld appointed Ms. Harkness to head two struggling departments, Quality Control and Human Resources, in addition to the Legal Department.  Ms. Harkness rose to the task.  She restructured Fieldstone's Quality Control department, increasing its efficiency, and turned around what had been a

4

defective Human Resources Department, all within the first few months of employment at

Fieldstone.

19.     Mr. Sonnenfeld was highly impressed by Ms. Harkness' achievements.  He gave

Ms. Harkness a glowing annual review in January 2005 and an overall performance rating of

"4+" out of 5.  Mr. Sonnenfeld also awarded Ms. Harkness a substantial salary increase and

bonuses.

20.     On or about January 14, 2005, at a time when Fieldstone's stock was "in

registration," Fieldstone's assistant general counsel, Sally LaFond, informed Ms. Harkness that

an auditor and a Fieldstone executive had just reported to her that Mr. Sonnenfeld informed an

outside investor that Fieldstone was about to restate its earnings – information that had not yet

been made public.

21.     Ms. Harkness recognized that Mr. Sonnenfeld's reported conduct – disclosing

non-public information to an outside investor –  implicated serious federal securities law

violations, including Regulation FD, 17 C.F.R. § 243.  After researching her legal obligations,

including requirements under the Sarbanes-Oxley Act, Ms. Harkness concluded she was

obligated to notify Fieldstone's Audit Committee.  At the direction of the Chairman of

Fieldstone's Audit Committee, Jonathan Michael, Ms. Harkness and Ms. LaFond conducted an

investigation into the facts and reported their findings to the Chairman.

22.     On or about January 17, 2005, Ms. Harkness and Ms. LaFond interviewed Harry

Argires and Robert Partlow, the auditor and executive who had reported Mr. Sonnenfeld's

disclosure.  Mr. Argires and Mr. Partlow explained that during a meeting with Mr. Sonnenfeld,

Mr. Sonnenfeld described a conversation he had had with an outside investor and said that he

5

told the investor Fieldstone would be restating its earnings.  Concerned that Mr. Sonnenfeld gave information in potential violation of securities regulations, Mr. Argires and Mr. Partlow immediately reported the conversation to Ms. LaFond.

23.    Following the interviews, Ms. Harkness called Mr. Michael, and reported the facts she had learned.  After speaking with his securities counsel, Mr. Michael advised Ms. Harkness to continue her investigation by interviewing Mr. Sonnenfeld.

24.    At the Audit Committee Chairman's direction, Ms. Harkness and Ms. LaFond interviewed Mr. Sonnenfeld.  Mr. Sonnenfeld confirmed that he had disclosed non-public information to an outside investor regarding Fieldstone's earnings restatement and said he had done so because he wanted to get a sense of the likely market reaction to the restatement.

25.    Ms. Harkness promptly reported Mr. Sonnenfeld's comments to Mr. Michael, who responded that he would contact her after he determined the next course of action.

26.    On or about January 19, 2005, Mr. Michael told Ms. Harkness that he had talked to his securities counsel and did not believe that Mr. Sonnenfeld violated any securities laws.  At Mr. Michael's request, on or about January 26, 2005, Ms. Harkness provided him with a memorandum of her investigation and the legal implications of Mr. Sonnenfeld's disclosure.

27.    The Audit Committee took no further action.

28.    In or around late January 2005, when Mr. Sonnenfeld learned that Ms. Harkness had reported his disclosure to the Audit Committee, he immediately summoned a meeting with Fieldstone's Human Resources directors, Jeanie Slone and Carol Ballentine.  Mr. Sonnenfeld told Ms. Slone and Ms. Ballentine that he wanted to fire Ms. Harkness because her action in reporting his conduct to the Audit Committee caused him to lose confidence in her.

29.     Ms. Ballentine and Ms. Slone warned Mr. Sonnenfeld that firing Ms. Harkness could violate the Act and eventually persuaded him not to terminate Ms. Harkness at that time.

30.     On February 3, 2005, Fieldstone's stock became publicly traded.  Subsequently, Mr. Sonnenfeld launched a two-year personal campaign against Ms. Harkness.  For the remainder of 2005, Mr. Sonnenfeld criticized Ms. Harkness and berated her when she advised him of Fieldstone's legal risks.  Mr. Sonnenfeld also blamed Ms. Harkness for conduct that he knew was not attributable to her.

31.     Though Ms. Harkness continued to perform her job duties in a stellar fashion, Mr. Sonnenfeld gave Ms. Harkness a markedly cold annual review in January 2006.  In that annual review – the first since he had learned of her disclosure – Mr. Sonnenfeld dropped Ms. Harkness' performance rating to 3 out of 5, chastised her for questioning a decision he made regarding the replacement of Fieldstone's outside litigation counsel, and commented that Ms. Harkness "must focus equally on achieving desired business objectives as on avoiding legal risk."

32.     In January 2006, Mr. Sonnenfeld sought to isolate Ms. Harkness in the company so that she could no longer effectively perform her role as General Counsel of Fieldstone.  Mr. Sonnenfeld removed Ms. Harkness' responsibilities as head of the Quality Control and Human Resources departments.  He stripped Ms. Harkness of her executive role in the company and told Ms. Harkness that she would no longer report to him, but to the Chief Financial Officer, a position that was unfilled at that time.  The position was later filled by Nayan Kisnadwala in February 2006.

33.     Mr. Sonnenfeld also prohibited Ms. Harkness from attending weekly senior management meetings.  When Ms. Harkness asked how she could be expected to advise

Fieldstone as its General Counsel if she did not participate in meetings, Mr. Sonnenfeld had no response, noting however, that "it was a good question."

34.     As the 2006 year progressed, Mr. Sonnenfeld amplified his criticism and isolation of Ms. Harkness and her team.  Mr. Sonnenfeld refused to inform Ms. Harkness or her legal team about significant Fieldstone transactions that had legal implications for the company, including a possible transaction to acquire another company, despite the legal department's responsibility for making the required public SEC filings.  When, at the insistence of Ms. Kisnadwala, Mr. Sonnenfeld eventually included Ms. Harkness in the transaction team, he refused to allow Ms. Harkness to accompany the team on its due diligence trip.

35.     In mid-2006, Ms. Harkness learned of Mr. Sonnenfeld's intention to meet individually with investors without including a Fieldstone attorney or other Fieldstone officer and she warned Mr. Sonnenfeld that doing so could expose Fieldstone to liability for claims of violations of securities laws regarding insider trading.  Mr. Sonnenfeld lashed out at Ms. Harkness and made clear his view that the solution to this issue was for the General Counsel not to know about it.

36.     On another occasion, Mr. Sonnenfeld openly criticized Ms. Harkness' refusal to sign off on loan documents without first having reviewed them, but praised another Fieldstone employee for signing off on the documents without review.

37.     Despite Mr. Sonnenfeld's isolation and criticism of Ms. Harkness, Ms. Harkness continued to perform her role as General Counsel and ensure that Fieldstone met its legal obligations to the best of her ability.  She received a positive mid-year review from Mr. Kisnadwala and received a performance award from Mr. Kisnadwala in the fall of 2006.  Ms.

Harkness received 100% of her 2006 bonus based on accomplishing individual goals for that year.

38.     In late-November 2006, Fieldstone's external auditors from Deloitte & Touche, LLP asked Ms. Harkness whether she felt that the tone from the "top of the company" exhibited a commitment to legal compliance and ethics.  Ms. Harkness responded that because she had been routinely excluded from senior management meetings and discussions about subjects that could have significant legal and compliance implications, she could not definitively say such a tone existed.

39.     At the external auditor's suggestion, on December 5, 2006, Ms. Harkness discussed her concerns before Fieldstone's Audit Committee.  She also told the Committee that the Legal and Compliance Departments were unable to ensure that Fieldstone complied with all applicable regulatory requirements because those departments were understaffed.

40.     Shortly after the meeting, Ms. Harkness took a previously scheduled vacation. When she returned on December 29, 2006, Fieldstone informed Ms. Harkness that she would be discharged effective January 2, 2007, but gave her no reason for her termination.  Fieldstone subsequently postponed Ms. Harkness' termination until January 15.

41.     When negotiating her severance package, Fieldstone refused to provide Ms. Harkness with a severance package comparable to the one given to another manager – one who was terminated for misconduct, but had never opposed or questioned Mr. Sonnenfeld's conduct.

V.  Cause of Action

**VIOLATION OF SARBANES-OXLEY ACT**

42.      Plaintiff hereby incorporates each allegation of the preceding paragraphs.

43.      Fieldstone Investment Corporation was a "publicly traded company" under 18

U.S.C. § 1514A and was required to file reports under Section 15(d) of the Securities Exchange

Act at the time events giving rise to this complaint occurred.  Therefore, Fieldstone is a covered

entity under the Sarbanes-Oxley Act.

44.      Cynthia Harkness is an employee protected by the Act.

45.      Ms. Harkness' provision of information to the Audit Committee about Mr.

Sonnenfeld's disclosure of non-public information – conduct that she reasonably believed

constituted a violation of federal securities laws, including Regulation FD – and Ms. Harkness'

participation in an investigation about that conduct are protected activities under the Act.

46.      Fieldstone had knowledge of Ms. Harkness' protected activity.

47.      Fieldstone subjected Ms. Harkness to adverse action, including but not limited to

belittling Ms. Harkness for performing her job, removing responsibilities from her, excluding her

from participation in meetings, terminating her, and refusing to award her an appropriate

severance package.

48.      Ms. Harkness' protected activity constituted a contributing factor for the adverse

actions that Fieldstone took against her.

49.      Fieldstone cannot satisfy its heavy burden of proving that its adverse actions

against Ms. Harkness were not prompted, in whole or in part, by Ms. Harkness' protected

activity.

10

VI.  Prayer for Relief

WHEREFORE, Ms. Harkness prays that this Court:

    a.     Reinstate Ms. Harkness;

    b.     Award Ms. Harkness appropriate back pay and compensatory damages;

    c.     Award Ms. Harkness special damages, including emotional damages and

reasonable attorneys' fees, expenses and costs; and

    d.     Grant such other relief as may be just and necessary.

Respectfully submitted,

Daniel F. Goldstein, Fed. Bar No. 01036
Deborah Thompson Eisenberg, Fed. Bar No. 23022
Mehgan Sidhu, Fed. Bar No. 28173
BROWN, GOLDSTEIN & LEVY, LLP
120 E. Baltimore St., Suite 1700
Baltimore, Maryland  21202-6701
(410) 962-1030

*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact.

Daniel F. Goldstein

Date: January 28, 2008

11